J-S31004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDUL FLAMER | : | |
| | : | |
| Appellant | : | No. 3127 EDA 2023 |

Appeal from the PCRA Order Entered November 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0106981-2000

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 10, 2024**

Abdul Flamer appeals *pro se* from the order that dismissed as untimely his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

In late 1999, Appellant and a co-conspirator committed armed robbery of two individuals sitting in a parked vehicle.  One of the victims, Morgan Hall, tried to take Appellant's gun from him and was shot twice, with one shot grazing his ear and the other penetrating his neck.  Appellant was arrested and charged with various crimes related to the incident, including attempted murder and aggravated assault.  He appeared before the trial court on March 10, 2000, to enter a negotiated guilty plea.  The Commonwealth's statement of the factual basis for the plea included the following discussion of Hall's injuries:

[Commonwealth:]  The complainant Hall [identified] [Appellant] as the shooter during the robbery.

I will mark the medical records that shows [*sic*] the victim was in the hospital for about three days.

That shows that he suffered a graze wound to the ear.

There was a neurological test to see if there was any nerve damage.

[Defense counsel]:  I'll stipulate to the medical records.  They are what they are.

We know the bullet's still there.

[Commonwealth]:  The bullet's still in the complainant.

The court:  There was [nerve] damage?

[Commonwealth]:  They did a test to see if was there was any permanent nerve damage and there wasn't at the time.

N.T. Hearing, 3/10/00, at 31-32.

At the conclusion of the hearing, Appellant opted to go to trial instead of accepting the plea deal.  No exhibits were offered or admitted at the plea hearing.

Almost two years later, Appellant proceeded to a suppression hearing, followed immediately by a bench trial at which the Commonwealth proffered the testimony of Hall and two police officers.  Of note, Hall confirmed that Appellant shot the gun twice, with one bullet entering his neck, and he authenticated the prosecution's Exhibit C-2, which was a photograph of him with a bandage behind his ear, as representing where the bullet struck him. ***See*** N.T. Trial, 12/4/01, at 46-47.  He further testified that he was treated at

University of Pennsylvania Hospital, where he stayed for two to three days, and that he had lingering scars and pain from the gunshot wound. ***Id***. In all, the Commonwealth offered five exhibits, none of which included Hall's medical records.[1]

Ultimately, the trial court found Appellant guilty of one count each of conspiracy and aggravated assault, as well as two counts each of attempted murder, robbery, and firearms violations. On June 24, 2002, the trial court sentenced Appellant to twenty-seven and one-half to seventy years of incarceration, and this Court affirmed the judgment of sentence on June 6, 2003. ***See Commonwealth v. Flamer*** ("***Flamer I***"), 830 A.2d 1045 (Pa.Super. 2003) (unpublished memorandum), *appeal denied*, 837 A.2d 1177 (Pa. 2003).

Appellant timely pursued his first PCRA petition in 2003. Appointed counsel filed an amended petition, which the PCRA court denied without a hearing in May 2005. Appellant waived his right to counsel and litigated his appeal *pro se*. One of the issues he raised was "[w]hether trial counsel rendered [Appellant] ineffective assistance of counsel for failing to impeach . . . Hall's testimony that he was shot in the head and the bullet remains

_____

[1] Exhibits C-1 and C-3 were photo arrays, C-4 was a property receipt for a spent shell recovered from the vehicle in which the robbery occurred, and C-5 was a certificate indicating that Appellant was not licensed to carry a firearm. ***See*** N.T. Trial, 12/4/01, at 12-13, 51, 73, 76. All but C-5 were included in the electronic certified record in December 2023 in a PDF document labeled "Trial Court Record - Sensitive Documents."

lodged in his neck, and another bullet grazed his ear, when the medical reports states [*sic*] otherwise[.]" ***Commonwealth v. Flamer*** ("***Flamer II***"), 953 A.2d 828 (Pa.Super. 2008) (unpublished memorandum at 4). Appellant also contended that the court applied the incorrect offense gravity score in sentencing him, arguing that the Commonwealth failed to prove that Hall suffered serious bodily injury. ***Id***. (unpublished memorandum at 9). In connection with these claims:

> During the pendency of the appeal, [Appellant] filed several *pro se* motions with this Court, seeking production of Hall's medical records. This Court directed the trial court to provide [Appellant] with any records that it deemed were necessary for his appeal. On May 2, 2006, the trial court found that the medical records were not necessary to the appeal. [Appellant] then filed another *pro se* motion with this Court seeking the medical records. This Court denied the motion without prejudice for [Appellant] to raise the issue in his appellate brief.

***Id***. (unpublished memorandum at 3) (unnecessary capitalization omitted).

In addressing Appellant's issues, this Court indicated that he "baldly state[d] that medical records would have supported his defense, but provide[d] no support in the record for his claim; instead he restate[d] the procedural history of his various motions that he filed with this Court when seeking to obtain Hall's medical records." ***Id***. (unpublished memorandum at 12). Indeed, we observed that Appellant had not "indicated that Hall's medical records were even introduced at trial, relied upon by the Commonwealth or that they were ever a part of the certified record." ***Id***. (unpublished memorandum at 12 n.2).

- 4 -

Concerning his ineffectiveness claim, we recounted Appellant's argument that the medical records would "contradict Hall's testimony that he was shot in the neck," and "demonstrate that he did not act with a specific intent." *Id*. (unpublished memorandum at 12). This Court again rejected his "bald allegations about how the various reports, including Hall's medical reports, demonstrated the inconsistencies in Hall's testimony," and found that he had not established that the medical records "would indicate anything other than the fact Hall had been shot in the neck." *Id*. (unpublished memorandum at 12-13). Thus, we held that Appellant did not show that counsel's failure to impeach Hall with the medical records would have changed the outcome of the trial. *Id*. (unpublished memorandum at 13). Consequently, we affirmed the denial of PCRA relief.

Appellant filed the PCRA petition that is the subject of this appeal in January 2023.[2] Therein, he raised the same or similar issues as those noted above, as well as a claim that his sentence was illegal, and again asked for the Commonwealth to produce Hall's medical records. He pled that his petition satisfied an exception to the PCRA's one-year time bar as follows:

> 14. [Appellant] avers that this filing does comply with the provisions of 42 Pa.C.S. [§] 9545, whereas [he] has "New Evidence" related to documents, records, and facts that were

_____

[2] The only docket entries between this Court's 2008 affirmance of the dismissal of Appellant's first PCRA petition and the filing of the instant petition were one in October 2012 stating "Return Case From Collection Agency - Court Request/Order" and another in July 2022 for Appellant's right-to-know document request dated June 29, 2022.

committed during pre-trial, trial and on appeal, wherein the Commonwealth or it's [*sic*] agents knew or should have known that discovery violations occurred and that there was testimony and records admitted into evidence, without prior knowledge of the same given to the [Appellant] or [his] counsel as it relates to medical records, photographs, and false testimony provided by the witnesses for the Commonwealth. [Appellant] has acted with all due diligence in this matter and has previously sought orders to be issued, through mandamus, to the lower court to turn over the records in question. To wit: [Appellant] did hire a private investigator to attempt to receive these "missing" records, to no avail and [Appellant] does file this petition within 60 days of discovering the new evidence, whereas, the final report from the investigator, clearly states that the records are not in the file and cannot be located by the investigator. This filing fully complies to 42 Pa.C.S. [§] 9545(b)(1)(i)-(iii) and therefore is ripe for review by this Honorable Court under the laws of the Commonwealth.

15. [Appellant] further states that the exceptions for a second or subsequent PCRA also apply as there is a sentencing issue that is nonwaivable and the court does, in fact, have jurisdiction to correct this error as well along with addressing the other merits of the issues before this court as a matter of law and therefore a hearing should be held to determine the facts of the case.

PCRA Petition, 1/18/23, at 8 (cleaned up).

Appellant appended to the petition correspondence from private investigator James Dorwat. Therein, Mr. Dorwat indicated that the medical records and other documents were not included in the copy of Appellant's file available in the Criminal Justice Center ("C.J.C."). *Id*. at Exhibit A-3. He contacted the Conviction Integrity Unit of the District Attorney's Office requesting the missing documents. *Id*. The responding assistant district attorney, Michael Garmisa, stated that an individualized screening of the case was required before any documents would be produced, and in any event were

only made available to lawyers subject to an agreements concerning their handling. *Id*. at Exhibit A-4—A-5. As no attorney had been assigned to review Appellant's case, and Mr. Dorwat was not an attorney, Attorney Garmisa was able neither to provide the requested documents nor to confirm whether the office had them. *Id*.

The PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907 due to its untimeliness. The court rejected Appellant's contention that it had jurisdiction to consider his illegal sentence claim as a newly-discovered fact. *See* Rule 907 Notice, 10/11/23, at unnumbered 1. The court further opined that the facts alleged concerning the medical records satisfied neither the newly-discovered facts exception nor the governmental interference exception. It observed that the transcripts cited by Appellant in his petition did not give any indication that the records in question had been withheld from the defense, and even if they had, Appellant had known that fact for years. *Id*. at unnumbered 2. The court continued:

> Furthermore, the private investigator's report merely indicates that the D.A.'s office refused to furnish the medical records in question to the investigator because he was not your attorney and does not contain any information about the availability of the medical records at your trial or the conduct of the prosecution. You have failed to explain how the purported denial of a third party investigator's request to access records from your case in 2022 supports the claim that the prosecution withheld these records from the defense at your trial more than twenty years ago.

*Id*.

Appellant did not file a response to the notice. The court proceeded to dismiss the petition by order of November 14, 2023. This timely appeal followed. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and none was filed. The court authored a Rule 1925(a) opinion further explaining its reasoning.

Appellant presents the following questions for our consideration:

(1)  Did the PCRA court error [*sic*] in not granting relief when documents admitted into evidence by the prosecutor were never turned over to [Appellant] and [he] had acted with due diligence in order to gain access to these records?

(2)  Did the PCRA court error [*sic*] in not granting relief when the obstuction [*sic*] by government officials in regards to the evidence that should have been turned over to [Appellant] has yet to [be] receive[d,] which violates [his] right under law and the constitution even though [he] has acted with due diligence in order to try to gain access to these records?

(3)  Did the PCRA court error [*sic*] in not granting relief when prosecutorial misconduct occurred [*sic*] during the trial, in which had the prosecutor acted with the law and their oath would have changed the outcome of the trial and the sentence recived [*sic*] due to these errors?

(4)  Did the PCRA court error [*sic*] in not granting relief when ineffective assistance of counsel, where had counsel not been ineffective for failing to pursue discovery and thereby che[c]king the facts that the prosecutor was admitting into evidence[, Appellant] would not have been denied a fair trial which violatted [*sic*] [his]rights under the constitutions?

Appellant's brief at F (unnecessary capitalization omitted).

At the outset, we observe that "we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." ***Commonwealth v.***

*Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

It is well-settled that any PCRA petition must either be filed within one year of the judgment of sentence becoming final or meet a timeliness exception. *See* 42 Pa.C.S. § 9545(b)(1). "[T]he PCRA's time limitations are jurisdictional in nature and . . . neither [an appellate court] nor the PCRA court has jurisdiction over an untimely petition." *Commonwealth v. Taylor*, 283 A.3d 178, 184 (Pa. 2022). The PCRA provides as follows regarding the time for filing a petition:

> Any petition [filed pursuant to the PCRA], including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Further, a petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

As the instant petition was facially untimely, Appellant attempts to establish jurisdiction by invoking the newly-discovered facts and government interference exceptions. As he did in his prior PCRA petition, he maintains that Hall's medical records were offered by the Commonwealth and admitted at trial without first allowing him to see them, and that the Commonwealth subsequently suppressed them and the allegedly exculpatory evidence they contained in violation of **Brady v. Maryland**, 373 U.S. 83 (1963). Appellant asserts that the instant petition was promptly filed "after [he] hired a private investigator, was told by the investigato[r] the records were never a part of petitioners file at C.J.C. and his file at C.J.C. were and are [sic] missing documents." Appellant's brief at H (unnecessary capitalization omitted).

Appellant has failed to establish that the PCRA court erred in holding that his petition did not qualify for a timeliness exception. First, although he continues to assert that the "missing" medical records were admitted at his trial, his citations in support of this assertion are to the notes of testimony from March 10, 2000. That was the hearing at which Appellant was scheduled to enter his negotiated guilty plea, not his trial. As noted above, no medical records were offered into evidence at Appellant's trial. Nor were they admitted

- 10 -

into evidence at the March 10, 2000 hearing at which Appellant changed his mind about pleading guilty.

Second, although he insists that the medical records contain exculpatory information, it is obvious that his belief is still founded upon speculation. As was the case when he litigated his first PCRA petition, Appellant proffers no support for his bald assertions that the records "would indicate anything other than the fact Hall had been shot in the neck." *Flamer II*, 953 A.2d 828 (unpublished memorandum at 12-13).

Third, assuming *arguendo* that the Commonwealth did not produce the records to Appellant through discovery, that fact is certainly not new, as he has been complaining about it for nearly twenty years. *See id*.

Fourth, the investigator's discovery of the alleged fact that the medical records were not included in Appellant's case file is one he could have discovered years ago. Indeed, one would expect that the file would be the first place Appellant would have looked for them after this Court noted their absence from the certified record in affirming the dismissal of his first PCRA petition in 2008. *Id*.

Lastly, as for Appellant's assertion that the government interference exception applies, it is well-settled that, "[a]lthough a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have

been obtained earlier with the exercise of due diligence." ***Commonwealth v. Smith***, 194 A.3d 126, 133 (Pa.Super. 2018). The government plainly did not, until a year prior to the filing of the instant petition, interfere with Appellant's ability to assert a claim regarding the allegedly-suppressed medical records, as he did raise the matter in his 2003 petition. Further, he offers no explanation as to how the government interfered with his ability to raise before now the claim that the prosecution never placed in his file medical records that were referenced at his 2000 plea hearing but not admitted into evidence.

For these reasons, we agree with the PCRA court the report from Appellant's investigator indicating that medical records were not in his file does not suffice to establish jurisdiction for a court to consider the substance of the claims asserted in his petition. Moreover, his assertion that the non-waivability of his illegal sentencing claim conferred jurisdiction upon the court is also unavailing. ***See***, ***e.g.***, ***Commonwealth v. Taylor***, 65 A.3d 462, 465 (Pa.Super. 2013) ("[A]lthough illegal sentencing issues cannot be waived, they still must be presented in a timely PCRA petition.").

As a final matter, during the pendency of this appeal, Appellant filed three applications for relief concerning Commonwealth's trial Exhibit C-2, a photograph of Hall with a bandage behind his left ear, which was sent to him by the trial court upon his request for it to ensure this Court had all the exhibits

marked into evidence in his case.[3] Appellant seeks to file a supplemental brief based upon this supposedly-new evidence, suggesting that the photograph "only shows a single alleged injury" and "does not match the alleged medical records, which have still never been turned over to [him]." Application for Relief, 8/15/24.

The evidence offered and admitted in Appellant's 2000 trial is patently not new. Nothing about Exhibit C-2 advances his arguments concerning the timeliness of his 2023 PCRA petition, which is the determinative issue in this appeal. Accordingly, we deny his applications for relief.

Applications for relief denied. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2024

_____

[3] As noted earlier herein, the photograph, along with other trial exhibits, was forwarded to this Court at the outset of this appeal as part of the electronic certified record.

- 13 -